## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
## ATLANTA DIVISION

|  |  |
|---|---|
| SUSAN FINGER, | ) Civil Action No.<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) **COMPLAINT FOR**<br>) **VIOLATIONS OF THE**<br>) **FEDERAL SECURITIES**<br>) **LAWS** |
| SELECT INTERIOR CONCEPTS,<br>INC., L.W. VARNER, JR., S. TRACY<br>COSTER, DONALD MCALEENAN,<br>BRYANT RILEY, ROBERT SCOTT<br>VANSANT, and BRETT WYARD, | )<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Plaintiff Susan Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Select Interior Concepts, Inc. ("SIC" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which SIC will be acquired by Sun Capital Partners, Inc. ("Sun Capital") through its affiliates Astro Stone Intermediate Holding, LLC ("Parent") and Astro Stone Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.    On August 9, 2021, SIC issued a press release announcing it had entered into an Agreement and Plan of Merger dated August 8, 2021 (the "Merger Agreement") to sell SIC to Sun Capital.  Under the terms of the Merger Agreement, SIC stockholders will receive $14.50 in cash for each share of SIC common stock they own.  The Proposed Transaction is valued at approximately $411 million.

3.    On September 15, 2021, SIC filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that SIC stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) SIC's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, RBC Capital Markets, LLC ("RBC") and Truist Securities, Inc. ("Truist"); (iii) potential conflicts of interest faced by Truist; and (iv) the background of the

Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SIC stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.     In short, unless remedied, SIC's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because SIC is headquartered in this District and has engaged in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of SIC.

9.      Defendant SIC is a Delaware corporation, with its principal executive offices located at 400 Galleria Parkway, Suite 1760, Atlanta, Georgia 30339.  SIC is a premier distributor of interior building products with leading market positions in highly attractive markets.  SIC's common stock trades on the Nasdaq Capital Market under the ticker symbol "SIC."

10.     Defendant L.W. Varner, Jr. ("Varner") has been Chief Executive Officer ("CEO") and a director of the Company since June 2020.

11.     Defendant S. Tracy Coster ("Coster") has been a director of the Company since August 2018.

12.     Defendant Donald McAleenan ("McAleenan") has been a director of the Company since November 2017.

13.     Defendant Bryant Riley ("Riley") has been a director of the Company since November 2019.

14.     Defendant Robert Scott Vansant ("Vansant") has been a director of the Company since November 2017.

15.     Defendant Brett Wyard ("Wyard") has been a director of the Company since December 2017.

16.     Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17.     Sun Capital is a global private equity firm focused on partnering with outstanding management teams to accelerate value creation.  Sun Capital focuses on defensible businesses in growing markets with tangible performance improvement opportunities in the Business Services, Consumer, Healthcare, Industrial, and Technology sectors.

18.     Parent is a Delaware limited liability company and affiliate of Sun Capital.

19.     Merger Sub is a Delaware corporation and wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.    SIC is an installer and distributor of interior building products.  The Company has leading market positions in the selection and importation of natural and engineered stone slabs for kitchen and bathroom countertops and specialty tiles through its Architectural Surfaces Group ("ASG") operating segment.  ASG sources natural and engineered stone from a global supply base, and markets these materials through a national network of distribution centers and showrooms at 21 different locations.  In addition to serving the new residential and commercial construction markets with these materials, SIC also distributes them to the repair and remodel ("R&R") market.

21.    On August 9, 2021, the Company announced its second quarter 2021 financial results.  Net revenue for the second quarter of 2021 increased by 29.2% to $67.2 million, compared to net revenue of $52.0 million for the second quarter of 2020. Gross profit for the second quarter of 2021 increased by 51.4% to $20.0 million, compared to $13.2 million for the second quarter of 2020.  For the second quarter of 2021, net income from continuing operations was $2.5 million, or $0.10 basic EPS, compared to net loss from continuing operations of ($0.3 million), or ($0.01) basic EPS, for the second quarter of 2020.  EBITDA for the second quarter of 2021 increased 93.3% to $5.3 million, compared to EBITDA of $2.7 million for

the second quarter of 2020.  Reflecting on the Company's results, defendant Varner

stated:

> We entered the second quarter with good momentum and made
> excellent progress during the period with our many initiatives to drive
> Architectural Surfaces Group's ("ASG") organic growth and enhance
> its operations.  With the successful completion of the sale of our
> Residential Design Services ("RDS") business segment on June 30,
> 2021 and a newly strengthened balance sheet, we focused on how to
> best maximize SIC's shareholder value with our remaining business.

**The Proposed Transaction**

22.    On July 26, 2021, SIC issued a press release announcing the Proposed

Transaction, which states, in relevant part:

> ATLANTA, Aug. 09, 2021 -- Select Interior Concepts, Inc. (NASDAQ:
> SIC), a premier distributor of interior building products, today
> announced that it has entered into a definitive agreement under which
> an affiliate of Sun Capital Partners, Inc. ("Sun Capital") will acquire
> Select Interior Concepts ("SIC") for approximately $411 million in an
> all-cash transaction (the "Merger Transaction").
>
> Under the terms of the merger agreement, each share of SIC common
> stock issued and outstanding immediately prior to the closing of the
> transaction will be entitled to receive $14.50 per share in cash,
> representing a 32% premium over SIC's closing price and a 42%
> premium over SIC's 30-day volume-weighted average price of $10.20
> on August 6, 2021.  Subject to shareholder approval and other
> customary closing conditions, including the receipt of required
> regulatory approvals, the transaction is expected to close early in the
> fourth quarter of 2021.  Upon the completion of the transaction, SIC
> will become a privately held company and shares of SIC common stock
> will no longer be listed on any public markets.
>
> Brett G. Wyard, Chairman of SIC, commented, "On June 30, 2021,

when we announced the closing of the sale of our Residential Design Services segment, we noted that the Board was actively evaluating a full range of strategic, operational and financial alternatives to ensure that the Company was on the best path to delivering shareholder value. After thorough and thoughtful deliberations in consultation with our financial advisors, we are pleased to enter into a definitive sale agreement with an affiliate of Sun Capital.  In making this decision, the Board considered the current state of the business and its outlook and opportunities.  We believe this path is in the best interests of our shareholders, providing them with immediate and substantial value for their investment."

Bill Varner, Chief Executive Officer added, "This transaction will deliver significant cash value for SIC's shareholders as promised when I joined SIC.  Additionally, it offers exciting new opportunities for customers, partners and employees of our Architectural Surfaces Group ('ASG') segment.  We are very grateful to the entire team that contributed to SIC's and ASG's success over the years.  Sun Capital is the ideal partner to advance its long-term strategy and the transaction is a testament to the dedication and achievements of our team members."

"We have long been an active investor in the building materials sector, and have been impressed by SIC's track record, ability to deliver for customers and overall industry vision," said Jeremy Stone, Managing Director at Sun Capital.  "We are excited to support SIC's strong management team in the next stage of growth, capitalize on new opportunities and drive success."

In light of the pending sale of SIC, the second quarter 2021 earnings conference call previously scheduled for 5:00 PM ET on August 9, 2021 has been cancelled.  The Company will release its financial results for the second quarter of 2021 later today.

RBC Capital Markets, LLC and Truist Securities, Inc. served as financial advisors and Alston & Bird LLP served as legal advisor to SIC.

Raymond James & Associates, Inc. served as financial advisor and both Kirkland & Ellis LLP and Klehr Harrison Harvey Branzburg LLP

served as legal advisors to Sun Capital.

**Insiders' Interests in the Proposed Transaction**

23.     SIC insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of SIC.

24.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Sun Capital.  Pursuant to the Merger Agreement, all outstanding restricted shares of common stock, service-based restricted stock units of SIC ("Company RSUs"), and performance-based restricted stock units of the Company ("Company PSUs"), will vest and convert into the right to receive the Merger Consideration.   The following table sets forth the value of Company restricted stock and RSUs that Company insiders stand to receive:

| Name of Executive Officer or Director | Number of Unvested Shares of Restricted Stock or RSUs (#) | Estimated Value of Unvested Shares of Restricted Stock or RSUs ($) |
|---|---|---|
| *Executive Officer:* | | |
| L.W. Varner, Jr. | 375,000 | 5,437,500 |
| Nadeem Moiz | 191,733 | 2,780,129 |
| Shawn K. Baldwin | 139,488 | 2,022,576 |
| Patrick Dussinger | 84,375 | 1,223,438 |
| *Director:* | | |
| S. Tracy Coster | 5,289 | 76,691 |
| Donald McAleenan | 5,289 | 76,691 |
| Bryant R. Riley | 5,289 | 76,691 |
| Robert Scott Vansant | 5,289 | 76,691 |
| Brett Wyard | 5,289 | 76,691 |

The following table sets forth the value of Company PSUs that Company insiders stand to receive:

| Name of Executive Officer | Number of Shares Subject to Unvested PSUs (#) | Estimated Value of Unvested PSUs ($) |
|---|---|---|
| L.W. Varner, Jr. | 500,000 | 7,250,000 |
| Nadeem Moiz | 175,000 | 2,537,500 |
| Shawn K. Baldwin | 125,000 | 1,812,500 |
| Patrick Dussinger | 112,500 | 1,631,250 |

25.    Moreover, if they are terminated in connection with the Proposed Transaction, SIC's executive officers stand to receive substantial cash severance payments, as set forth in the following table:

| | Cash ($)[1] | Equity ($)[2] | Total ($) |
|---|---|---|---|
| L.W. Varner, Jr. | 1,387,459 | 12,687,500 | 14,074,959 |
| Nadeem Moiz | 1,715,616 | 4,955,129 | 6,670,745 |
| Shawn K. Baldwin | 1,540,197 | 3,837,686 | 5,377,883 |

**The Proxy Statement Contains Material Misstatements or Omissions**

26.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to SIC's stockholders.   The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

27.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) SIC's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, RBC and Truist; (iii) potential conflicts of interest faced by Truist; and (iv) the background of the Proposed Transaction.  Accordingly, SIC stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning SIC's Financial Projections***

28.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's financial projections.

29.     Specifically, in connection with RBC's *Discounted Cash Flow Analysis*, the Proxy Statement states:

> RBC Capital Markets performed a discounted cash flow analysis of
> the Company by calculating the estimated present value of the
> standalone unlevered free cash flows that the Company was forecasted
> to generate during the fiscal years ending December 31, 2021 through
> December 31, 2025 based on financial projections and other estimates
> and data of the Company's management.

Proxy Statement at 47.   The Proxy Statement fails, however, to disclose the

standalone unlevered free cash flows that the Company was forecasted to generate

during the fiscal years ending December 31, 2021 through December 31, 2025 and

the line items underlying the Company's unlevered free cash flows.

30.     Similarly, in connection with Truist's *Discounted Cash Flow Analysis*,

the Proxy Statement states:

> Truist Securities performed a discounted cash flow analysis of
> the Company by calculating the estimated net present value of the
> projected unlevered free cash flows (calculated as earnings before
> interest and taxes, less taxes, plus depreciation and amortization, less
> capital expenditures and less the amount of any increase or plus the
> amount of any decrease in net working capital) of the Company based
> on the financial projections provided by the Company for the years
> 2021 to 2025.

*Id*. at 53-54.  As set forth above, the Proxy Statement fails to disclose the unlevered

free cash flows to be generated by SIC for the years 2021 to 2025, as well as the

items underlying unlevered free cash flow.

31.     The omission of this information renders the statements in the

"Financial Projections" and "Opinions of SIC's Financial Advisors" sections of the

Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning RBC's and Truist's Financial Analyses***

32.    The Proxy Statement describes RBC's and Truist's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of RBC's and Truist's fairness opinions and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, SIC's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on RBC's and Truist's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to SIC's stockholders.

33.    With respect to RBC's *Selected Public Companies Analyses* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies and transactions analyzed, respectively.

34.    With respect to RBC's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the standalone unlevered free cash flows that SIC was projected to generate during the fiscal years ending December

31, 2021 through December 31, 2025; (ii) quantification of the terminal year unlevered free cash flow utilized in the analysis; and (iii) quantification of the inputs and assumptions used to derive the discount rate range of 13.0% to 15.0%.

35.    With respect to Truist's *Selected Public Companies Analyses* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies and transactions analyzed, respectively.

36.    With respect to Truist's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the unlevered free cash flows for SIC that Truist utilized in the analysis; and (ii) quantification of the inputs and assumptions used to derive the discount rate range of 10.7% to 11.6%

37.    When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38.    The omission of this information renders the statements in the "Opinion of SIC's Financial Advisors" and "Financial Projections" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Potential Conflicts of Interest of Truist***

39.     The Proxy Statement fails to disclose the potential conflicts of interest faced by the Company's financial advisor Truist.

40.     For example, the Proxy Statement fails to disclose whether Truist has provided any services to Sun Capital or its affiliates in the past two years and, if so, the nature of the services provided and the fees received by Truist for providing the services.

41.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42.     The omission of this information renders the statements in the "Opinion of SIC's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

43.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

44.     For example, the Proxy Statement fails to disclose whether the confidentiality agreements SIC entered into with parties during the sale process included standstill provisions or "don't-ask, don't-waive" standstill provisions that are presently precluding these potential counterparties from submitting a topping bid

for the Company.

45.    The disclosure of the terms of these confidentiality agreements is crucial to SIC stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

46.    The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of SIC will be unable to make a fully-informed decision on whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

48.    Plaintiff repeats all previous allegations as if set forth in full.

49.    During the relevant period, defendants disseminated the false and

misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about SIC's financial projections, the financial analyses performed by the Company's financial advisors, potential conflicts of interest faced by Truist, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

52.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.

Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

54.     Plaintiff repeats all previous allegations as if set forth in full.

55.     The Individual Defendants acted as controlling persons of SIC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SIC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and

supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

58.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, SIC's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of SIC, and against defendants, as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to SIC stockholders;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: September 30, 2021                **WEISSLAW LLP**

                                        /s/ Michael A. Rogovin
                                        Michael A. Rogovin
                                        Georgia Bar No. 780075
                                        476 Hardendorf Ave. NE
                                        Atlanta, GA 30307
                                        Tel.: (404) 692-7910
                                        Fax: (212) 682-3010
                                        mrogovin@weisslawllp.com
                                                -and-
                                        Richard A. Acocelli
                                        305 Broadway, 7th Floor
                                        New York, NY  10007
                                        Telephone: 212/682-3025
                                        Facsimile:  212/682-3010

                                        *Attorneys for Plaintiff*